IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:26-CV-748

| | | |
|---|---|---|
| ALKAREEM PEARSON<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS d/b/a SPECTRUM<br><br>Defendants. | ) | **COMPLAINT**<br>**(Jury Trial Requested)** |

NOW COMES Plaintiff by and through the undersigned counsel, complaining of Defendant and alleges and says:

## PARTIES

1. Plaintiff AlKareem Pearson is a resident of Mecklenburg County, North Carolina.
2. Defendant Charter Communications, LLC, doing business as Spectrum, is an employer that conducts substantial business in North Carolina, including at facilities in located in Charlotte, North Carolina.
3. At all relevant times, Defendant employed Plaintiff as a Business Retention / Customer Solutions Representative in its Small Business customer-solutions operation.
4. Defendant was Plaintiff's employer and is a covered entity under the Americans with Disabilities Act of 1990, as amended ("ADA"), and a covered employer under the Family and Medical Leave Act ("FMLA").

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction because this action arises under federal law, including the ADA and FMLA.

6. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in North Carolina and the acts and omissions alleged in this Complaint occurred in North Carolina.

7. Venue is proper because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

8. Plaintiff has Major Depressive Disorder, Generalized Anxiety Disorder, and Attention-Deficit/Hyperactivity Disorder, for which he receives psychiatric care.

9. Plaintiff's impairments substantially limit major life activities, including concentrating, thinking, sleeping, interacting with others, and neurological and brain functions.

10. Plaintiff's conditions are chronic and may cause anxiety flare-ups requiring immediate deescalation and treatment.

11. A public office environment causes Plaintiff increased anxiety and distraction that negatively affect his work performance.

12. Plaintiff was qualified to perform the essential functions of his position with a reasonable accommodation, including remote work.

13. For approximately twelve months before Plaintiff's medical leave, he performed his Business Retention / Customer Solutions Representative position entirely from home.

14. While working remotely, Plaintiff received an overall performance rating of "4 – Exceeded Expected Performance."

15. Defendant's performance records also reflect Plaintiff's high rankings while working remotely, including a rank of first among 239 employees in July 2025 and second among 242 employees in August 2025.

16. Plaintiff took medical leave beginning on or about December 17, 2025, for a qualifying serious health condition.

17. Plaintiff was an eligible employee who exercised his rights under the FMLA.

18. On or about March 5, 2026, before returning from leave, Plaintiff requested reinstatement to his remote working arrangement and requested continued remote work as a reasonable accommodation under the ADA.

19. Plaintiff explained he had successfully performed his job remotely for approximately twelve months, remained able to perform the job's essential functions remotely, and was prepared to provide medical documentation and participate in the interactive process.

20. That same day, Defendant stated Plaintiffwas expected to report on-site on March 9, 2026, unless an accommodation was approved.

21. Defendant further advised Plaintiff his remote access would not remain active while his request was pending.

22. Plaintiff requested an interim remote-work accommodation while Defendant reviewed his medical documentation.

23. On or about March 9, 2026, Plaintiff explained in writing that he remained ready and able to perform his job remotely, and asserted changing his established remote working conditions following protected leave violated his rights.

24. On or about April 1, 2026, Defendant approved three ineffective in-office measures including: noise-cancelling headphones, one additional thirty-minute break, and access to a proposed quiet area during break periods.

25. Immediately following, on or about April 2, 2026, Defendant expressly denied Plaintiff's remote-work accommodation request and directed Plaintiff to return to work in the office using the offered in-office measures.

26. Plaintiff informed Defendant that the offered measures were ineffective because he had already used noise-cancelling headphones and the measures not completely ignored and failed to address the environmental barriers identified by his healthcare provider.

27. Plaintiff requested his job description, performance records, and related information so his provider could perform an individualized assessment of his ability to perform the job's essential functions.

28. Defendant did not provide Plaintiff the requested job description or performance records during the accommodation process.

29. On or about April 9, 2026, Defendant stated it would review updated provider documentation as part of its ongoing accommodation process, but reiterated that Plaintiff's position was not designated as remote.

30. Plaintiff's treating provider submitted a written clarification which Defendant received on or about May 15, 2026.

31. Plaintiff's treating provider explained Plaintiff had worked from home for the preceding year, verified Plaintiff's home-office setup and remote-work history, and stated there was no reason Plaintiff could not continue working remotely as an accommodation.

32. The provider further stated that Plaintiff could perform his current job remotely, that a public office environment worsened Plaintiff's anxiety and distraction, and the provider would not recommend the proposed alternative in-office accommodations.

33. Despite receiving Plaintiff's updated medical documentation, Defendant continued to offer only the same three ineffective in-office measures.

34. On or about May 18, 2026, Plaintiff filed EEOC Charge No. 430 03027 against Defendant, alleging disability discrimination based on the denial and delay of his requested accommodation.

35. Defendant knew of Plaintiff's EEOC charge because Plaintiff later provided the charge to Defendant during the accommodation process.

36. In direct retaliation for submission of the charge, approximately 10 days later, on or about May 27, 2026, Defendant characterized Plaintiff's absences as unprotected and warned that his failure to report to the office could affect his employment status.

37. On or about May 28, 2026, Defendant again warned Plaintiff that failure to return to work in the office or a denial of his leave request could affect his employment status.

38. Defendant later recognized that Plaintiff's leave from May 18 through June 14, 2026, had been approved.

39. On or about June 12, 2026, Plaintiff submitted a formal internal complaint alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation.

40. Plaintiff's June 12 complaint expressly stated he was not resigning, abandoning his job, or declining accommodation; that he remained ready, willing, and able to work remotely; and that he sought an effective accommodation consistent with his provider's documentation and professional opinion.

41. Plaintiff requested written answers concerning the essential job functions, including whether remote work would cause undue hardship, whether Defendant considered the

offered measures effective, whether Defendant reviewed his updated medical records, and whether Defendant would reconsider remote work.

42. Defendant's only response to Plaintiff's June 12 internal complaint provided contact information for its ethics line and did not answer Plaintiff's substantive questions.

43. .

44. Plaintiff consistently informed Defendant that he was not requesting additional leave, was not resigning, and remained ready, willing, and able to perform the essential functions of his job remotely as had been done the preceding year.

45. On or about June 29, 2026, Defendant characterized Plaintiff's request for remote work as Plaintiff's "decision not to return to work" and required additional medical documentation to support leave rather than addressing Plaintiff's accommodation request to work remotely.

46. On or about June 29, 2026, Defendant closed Plaintiff's accommodation case with only the three in-office measures and closed a related continuous-leave case for purportedly lacking additional documentation.

47. Later on the same day Defendant stated it had reviewed Plaintiff's information and concluded that the in-office measures were "reasonable and effective" accommodations with no support for the same.

48. Defendant did not state that remote work would cause an undue hardship or that in-person physical presence was an essential function of Plaintiff's position. In fact, Defendant stated Plaintiff needed to complete electronic training on a computer, which had previously been done remotely.

49. In fact, Defendant stated Plaintiff needed to complete electronic training.

50. In the same June 29 communication, Defendant confirmed that Plaintiff remained employed.

51. Defendant's FMLA policy provides that an employee returning from FMLA leave will be restored to the same or an equivalent position with the same pay, benefits, and working conditions.

52. Defendant's FMLA policy also provides that Defendant will not interfere with, restrain, or deny rights under the FMLA and will not terminate or discriminate against an individual for opposing an unlawful FMLA practice.

53. Plaintiff's working condition before his medical leave was remote work and Defendant materially and substantially denied Plaintiff's same working conditions following his return from FMLA protected leave.

54. On or about July 31, 2026, Plaintiff's employer-sponsored health coverage ended because of the duration of his leave status.

55. Plaintiff has suffered lost wages, lost employment benefits, insurance-related expenses, emotional distress, and other damages as a direct result of Defendant's conduct.

## COUNT I
## ADA DISCRIMINATION AND FAILURE TO ACCOMMODATE

56. Plaintiff incorporates by reference Paragraphs 1 through 55.

57. Plaintiff is an individual with a disability within the meaning of the ADA.

58. Defendant knew of Plaintiff's disabilities and his need for an accommodation through Plaintiff's written accommodation request and his provider's medical documentation.

59. Plaintiff was qualified to perform the essential functions of his position with the reasonable accommodation of remote work.

60. Remote work was a reasonable accommodation because Plaintiff had already performed the same position remotely for approximately twelve months with strong performance results.

61. Defendant denied Plaintiff's request for remote work and instead offered in-office measures that Plaintiff and his provider explained were ineffective.

62. Defendant failed to engage in a meaningful, individualized process to identify an effective accommodation, including by failing to address Plaintiff's provider's recommendation, failing to provide requested job-related information, and failing to provide a substantive basis for its denial until June 29, 2026.

63. Defendant's failure to provide Plaintiff an effective reasonable accommodation discriminated against Plaintiff because of his disability in violation of the ADA.

## COUNT II
## ADA RETALIATION

64. Plaintiff incorporates by reference Paragraphs 1 through 63.

65. Plaintiff engaged in lawfully protected activity by requesting a reasonable accommodation, objecting to Defendant's return-to-office directive, filing EEOC Charge No. 430 03027, and submitting internal complaints of disability discrimination and retaliation.

66. Defendant knew of Plaintiff's protected activity.

67. After Plaintiff engaged in protected activity, Defendant issued repeated warnings that Plaintiff's employment status could be affected, characterized Plaintiff's accommodation request as a decision not to return to work, closed his accommodation and leave cases, and continued to deny the requested accommodation.

68. Defendant's actions would dissuade a reasonable employee from requesting an accommodation, opposing disability discrimination, filing an EEOC charge, or pursuing other protected rights.

69. Defendant took these adverse actions because Plaintiff engaged in protected activity.

70. Defendant retaliated against Plaintiff in violation of the ADA.

## COUNT III
## FMLA INTERFERENCE

71. Plaintiff incorporates by reference Paragraphs 1 through 70.

72. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny an employee's exercise or attempted exercise of FMLA rights.

73. Plaintiff exercised his right to take FMLA leave for his serious health condition.

74. Before Plaintiff's return from leave, Defendant informed him that it would not restore the remote working condition under which he had performed his job for approximately twelve months.

75. Defendant instead conditioned Plaintiff's return to work on reporting to an office despite Plaintiff's request to resume work remotely and despite Plaintiff's documented ability to perform the job remotely.

76. By refusing to restore Plaintiff to the same or an equivalent position with equivalent working conditions and by imposing materially different return-to-work conditions, Defendant interfered with, restrained, or denied Plaintiff's FMLA rights.

77. As a direct and proximate result of Defendant's interference, Plaintiff suffered lost wages, lost commissions, lost benefits, and other economic damages.

## COUNT IV
## FMLA RETALIATION

78. Plaintiff incorporates by reference Paragraphs 1 through 77.

79. The FMLA makes it unlawful for an employer to discharge or otherwise discriminate against an individual for opposing a practice made unlawful by the FMLA.

80. Plaintiff engaged in protected activity by taking FMLA leave, requesting reinstatement to his prior remote working condition, and objecting to Defendant's requirement that he return to an office following leave.

81. Defendant knew of Plaintiff's exercise of FMLA rights and his opposition to Defendant's return-to-office directive.

82. Defendant thereafter issued warnings that Plaintiff's employment status could be affected, characterized Plaintiff's absences as unprotected before leave approval was confirmed, and attempted to characterize Plaintiff's request to work remotely as a decision not to return to work.

83. Defendant's adverse actions were causally connected to Plaintiff's exercise of FMLA rights and his opposition to Defendant's practices.

84. Defendant retaliated against Plaintiff in violation of the FMLA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a jury trial on all issues so triable, and the Court enter judgment in his favor against Defendant awarding:

a) A declaration that Defendant violated the ADA and FMLA;

b) Injunctive relief requiring Defendant to provide an effective reasonable accommodation, including remote work, and to cease retaliatory conduct;

c) Reinstatement to Plaintiff's position with the same or equivalent working conditions, pay, benefits, and employment status;

d) Back pay, including lost wages, salary, commissions, benefits, and prejudgment interest;

e) Front pay if reinstatement is not feasible;

f) Compensatory damages for emotional distress, mental anguish, inconvenience, and other nonpecuniary losses;

g) Punitive damages as permitted by law;

h) Liquidated damages under the FMLA as permitted by law;

i) Recovery of lost employment benefits, insurance-related expenses, and other out-of-pocket losses;

j) Costs, expenses, and reasonable attorney's fees as permitted by law; and

k) Such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of September, 2026.


**LEITNER, BRAGG, & GRIFFIN**

Bryan M. Sumner
N.C. Bar No: 55515
*Attorney for Plaintiff*
1951 Clark Avenue
Raleigh, North Carolina 27605
(919) 352-9140 Telephone
(704) 321-4105 Facsimile

## VERIFICATION

I, **AlKareem Pearson**, state I am the Plaintiff in the foregoing action. I have read the foregoing Complaint and the allegations contained therein are true and accurate based upon my own memory, knowledge, and belief. The attorneys for Plaintiff have relied upon the information I have supplied regarding the foregoing allegations in this Complaint.

Kareem Pearson

**AlKareem Pearson**

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be filed the foregoing **COMPLAINT** via CM/ECF which will send notice of the filing to all registered parties and have further caused the foregoing to be served via United States Postal Service or other qualified courier and addressed to the individuals below, and via certified mail, return receipt requested.

This the 18th day of September, 2026.

**LEITNER, BRAGG, & GRIFFIN**

Bryan M. Sumner

Bryan M. Sumner
N.C. Bar No: 55515
*Attorney for Plaintiff*
1951 Clark Avenue
Raleigh, North Carolina 27605
(919) 352-9140 Telephone
(704) 321-4105 Facsimile